**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CONCERNEDAPE LLC, | |
| Plaintiff, | Case No. 26-cv-3505 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | Hon. Virginia M. Kendall |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS**
***EX PARTE* MOTION TEMPORARY RESTRAINING ORDER INCLUDING**
**TEMPORARY INJUNCTION, TEMPORARY ASSET RESTRAINT, EXPEDITED**
**DISCOVERY, AND ORDER TO SHOW CAUSE**
**WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**TABLE OF CONTENTS**

I.    Introduction .............................................................................................................................. 1

II.   The Background Facts ............................................................................................................. 1

  A.   Plaintiff's Trademarks, Copyrights and Products ............................................................. 1

  B.   Defendants' Unlawful Conduct ........................................................................................ 2

III.  Entry of A Temporary Restraining Order with Temporary Injunction is Appropriate ........ 2

  A.   Defendants Should Be Temporarily Restrained from Violating Plaintiff's Trademark and Copyright Rights ............................................................................................................ 4

    1.   Plaintiff Will Prevail On Its Trademark Claim .................................................................. 5

    2.   Plaintiff Will Prevail On Its Copyright Claims ................................................................. 7

    3.   Plaintiff Will Suffer Irreparable Harm In the Absence of a Preliminary Injunction ........ 8

    4.   The Balance of Hardship Favors Granting Temporary Injunctive Relief and the Public Interest is Served by Entry of the Injunction .......................................................................... 10

  B.   The Equitable Relief Sought by Plaintiff is Appropriate. .............................................. 11

    1.   This Action Should Proceed Without Notice to Defendants to Prevent the Destruction or Concealment of Evidence ..................................................................................................... 11

    2.   Preventing the Fraudulent Transfer of Assets is Appropriate. ...................................... 13

    3.   Plaintiff is Entitled to Expedited Discovery ................................................................... 14

IV.   Bond for the TRO or Preliminary Injunction ...................................................................... 15

V.    Conclusion ........................................................................................................................... 16

## I.  Introduction

Plaintiff, ConcernedApe LLC ("Plaintiff"), requests temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendants identified on Schedule A to the Complaint (collectively "Defendants"). Defendants are advertising, importing, distributing, offering for sale, and selling products using infringing and counterfeit versions of Plaintiff's federally registered trademarks and copyrights (collectively, the "Unauthorized Stardew Valley Products") through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run sophisticated counterfeiting operations and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Unauthorized Stardew Valley Products. Those e-commerce stores share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operations. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademark, as well as to protect unknowing consumers from purchasing Unauthorized Stardew Valley Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II.  The Background Facts

### A.  Plaintiff's Trademarks, Copyrights and Products

Plaintiff is an independent developer of the popular farm life simulation game Stardew Valley. Stardew Valley is a farming and life simulation game where players inherit a rundown

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces.

farm and play to restore the farm. Stardew Valley rapidly gained popularity and has sold over 41 million copies of the game as of December 2024. Since its inception, Plaintiff has marketed, advertised, sold, and offered for sale various goods under the Stardew Valley Trademarks and Copyrights (collectively, the "Stardew Valley IP").

**B.     Defendants' Unlawful Conduct**

The success of the Stardew Valley brand has resulted in its significant counterfeiting. Consequently, Plaintiff has launched a brand protection program to investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Recently, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale or selling Unauthorized Stardew Valley Products to consumers in this Judicial District and throughout the United States. Such activities have resulted in an increase in the shipment and importation of unauthorized products into the United States.

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Unauthorized Stardew Valley Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. If Defendants provide additional credible information regarding their identities, Plaintiff will amend the Complaint.

**III.    Entry of A Temporary Restraining Order with Temporary Injunction is Appropriate**

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Stardew Valley IP. Under Rule 65(b) of the Federal Rules of Civil Procedure the Court may issue an *ex parte*

2

Temporary Restraining Order when immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition. The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from the sale of Unauthorized Stardew Valley Products, their wrongful use of the Stardew Valley IP, and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to off-shore bank accounts outside the jurisdiction of this Court. See Declaration of Andrew Masterson, ¶30. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and 28 U.S.C. § 1338; and the Copyright Act, 17 U.S.C. § 504. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are foreign defendants and are subject to this Court's personal jurisdiction.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target their business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Defendants targeted sales to Illinois residents by setting up and operating e-commerce stores that

3

target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized Stardew Valley Products to residents of Illinois. *See, e.g.*, *Monster Energy Company v. Wensheng*, 136 F.Supp.3d 897, 904 (N.D. Ill., 2015) (defendants' offers to sell counterfeit product on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction over defendants in this court); *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC,* No. 10 C 4535, 2010 WL 4877708, at *7 (N.D. Ill. Nov. 23, 2010) ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant."). Each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff injury in Illinois.

### A. Defendants Should Be Temporarily Restrained from Violating Plaintiff's Trademark and Copyright Rights

The standards for granting a temporary restraining order and a preliminary injunction are the same. *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill 2019). Courts engage in a multi-step analysis when addressing preliminary injunctive relief. *Id.* First, the movant must show that: (1) it has some likelihood of success on the merits; (2) it has no adequate remedy at law; and (3) without relief it will suffer irreparable harm. *Id.* citing *GEFT Outdoors, LLC v. City of Westfiled*, 922 F.3d 357, 364 (7th Cir. 2019). The court then "weighs the irreparable harm that the moving party would suffer if the court were to grant the requested relief." *Id.* quoting *GEFT*, 922 F.3d at 364. Finally, the court considers the public interest. *USA-Halal*, 402 F. Supp. 3d at 433. The court weighs these factors on a sliding scale; the stronger a showing on one element, the less of showing is necessary on another. *Miyano Machinery USA, Inc. v. MiyanoHitec Machinery, Inc.*, 576 F. Supp. 2d 868, 879 (N.D. Ill. 2008).

The facts of this case compel the issuance of a temporary restraining order against

4

Defendants because Plaintiff meets all five requirements.

### 1.      Plaintiff Will Prevail On Its Trademark Claim

"A party moving for preliminary injunctive relief need not demonstrate a likelihood of absolute success on the merits. Instead, [it] must only show that [its] chances to succeed on [its] claims are better than negligible[,]" which is a "low threshold." *USA-Halal*, 402 F. Supp. 3d at 434 quoting *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017). Plaintiff can demonstrate a likelihood of success on all its claims.

Section 32 of the Lanham Act (15 U.S.C. § 1114) addresses infringement of a federally registered trademark and Section 43(a) of the Lanham Act (15 U.SC. § 1125) addresses infringement of unregistered trademarks. *See Fantasia Distribution, Inc. v. Rand Wholesale, Inc.*, 2014 WL 6980833, at *2 (N.D. Ill. 2014); *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). To succeed on a claim for trademark infringement under either Section 32 of the Lanham Act or unfair competition under 43(a) of the Lanham Act, the plaintiff must show (1) that the trademark is protectable and (2) that the defendant's use of that mark is likely to cause confusion among consumers. *Top Tobacco v. Fantasia Distribution Inc.*, 101 F.Supp.3d 783, 788 (N.D. Ill. 2015). *See UL LLC v. American Energy Products, LLC*, 358 F.Supp.3d 753, 758, n.2 (N.D. Ill. 2019) (holding state-law claims allege deceptive trade practices in violation of 815 ILCS 510/1 is subject to precisely the same standards as the federal infringement claims); *Microsoft Corp. v. Rechanik*, 249 Fed.Appx. 476, 479 (7th Cir. 2007) (deceptive trade practices based on trademark infringement are analyzed using the same standards as federal trademark claims).

First, Plaintiff has protectable rights in the Stardew Valley Trademarks. A plaintiff can allege a protectable mark by alleging that the mark is registered in the United States Patent and Trademark Office ("USPTO"), which provides "*prima facie*" evidence of the validity, ownership and exclusive right to use the registered mark. *Id.*

Plaintiff has attached its registration for the Stardew Valley Trademarks to its Complaint. Ex. A. The Stardew Valley Trademarks are inherently distinctive and have been continuously used and never abandoned. Therefore, the registrations for the Stardew Valley Trademarks constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive rights pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use the Stardew Valley Trademarks and none of the Defendants are authorized retailers of genuine Stardew Valley products.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp.*, 249 F. App'x at 479. Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the Stardew Valley Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

As set forth in more detail the supporting Declaration of Andrew Masterson ¶28, Plaintiff has shown that Defendants are selling Unauthorized Stardew Valley Products that look identical to genuine Stardew Valley Products and/or use infringing and counterfeit marks identical to the Stardew Valley Trademarks. Defendants sell products using the Stardew Valley Trademarks to the

6

same consumers that are targeted by Plaintiff. Defendants operate outside of Plaintiff's authorized seller network and damage Plaintiff's brand by failing to provide the high level of customer service required of Plaintiff's authorized sellers, which in turn damages the Stardew Valley brand and the good will associated with it. The pertinent consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Stardew Valley Products from Unauthorized Stardew Valley Products and are susceptible to having a poor consumer experience when dealing with an unauthorized vendor (such as Defendants) which the consumer then associates with the Stardew Valley brand to the detriment of Plaintiff. Defendants are intentionally trying to induce consumers to purchase Unauthorized Stardew Valley Products. In that regard, Defendants advertise Unauthorized Stardew Valley Products using the Stardew Valley Trademarks and images from Plaintiff's website. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Stardew Valley Products. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

That the products are likely fake is supported by the conclusions reached in the analysis described in the Declaration of Andrew Masterson ¶¶13-15. Screenshots of Defendants' uses of the Stardew Valley Trademarks are attached as Exhibits to the Declaration of Andrew Masterson, filed in support of Plaintiff's request. Accordingly, Plaintiff is likely to establish a prima facie case of trademark infringement, counterfeiting, and false designation of origin.

### 2. Plaintiff Will Prevail On Its Copyright Claims

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Plaintiff under the Copyright Act is the exclusive right to reproduce, prepare derivative works of, distribute copies of, and display the Stardew Valley Copyrights to the

7

public. 17 U.S.C. § 106. To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id*.

With respect to the first element, Plaintiff is the owner of the Stardew Valley Copyrights, including the distinctive characters embodied therein. See *Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 746 (S.D.N.Y. 2017) ("copyright law does protect characters who are sufficiently delineated to be original") (citing *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004) ("[n]o more is required for a character copyright"). Regarding the second element, Defendants are willfully and deliberately reproducing the Stardew Valley Copyrights in their entirety and are willfully and deliberately distributing copies of the Stardew Valley Copyrights to the public by sale. Defendants' unauthorized copies are identical or substantially similar to the Stardew Valley Copyrights. As this type of copying directly infringes Plaintiff's rights under 17 U.S.C. § 106, Plaintiff has proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

### 3. Plaintiff Will Suffer Irreparable Harm In the Absence of a Preliminary Injunction

Once a likelihood of success on the merits has been shown, a plaintiff must show that it is

likely to suffer irreparable injury absent entry of the requested injunction. See *Winter v Natural Res. Def. Council, Inc.*, 555 US 7, 22 (2008). The existence of irreparable injury is positively supported by the fact that the Plaintiff's use of its IP and the infringing use are identical, that the products are the same, and that the markets are the same. *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979). These factors by themselves are indicative of irreparable injury. *Id.* Indeed, "essential to trademark law is the presumption that use of a trademark or trade name identical with that of a competitor, on similar goods and in a similar business, causes deception and confusion of the public. *Nims, The Law of Unfair Competition in Trademarks,* 1078 (4th ed. 1947). Similarly, irreparable injury in copyright infringement cases is shown when "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger v. Colting*, 607 F.3d 68, 80 (citing *Ebay Inc. v Mercexchange, L.L.C.*, 547 US 388, 391 (2006)). For example, an injury that "is not easily measurable in monetary terms, such as an injury to reputation or goodwill, is often viewed as irreparable." *Enverve, Inc v Unger Meat Company*, 779 F Supp 2d 840, 844 (N.D. Ill 2011) (citing 11A Charles Alan Wright, Arthur Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice Procedure* § 2948.1 (2d ed.)). This readiness to find irreparable injury arises, in part, from the realization "that the most corrosive and irreparable harm attributable to infringement is the inability of the victim to control the nature and quality of the defendant's goods". *Ideal Industries*, 612 F.2d at 1026 quoting 4 Callman, Unfair Competition, Trademarks and Monopolies s 88.3(b) at 205 (3d ed. 1970).

Defendants' unauthorized use of the Stardew Valley IP has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to reputation, loss of exclusivity, loss of future sales, loss of control over the customer service interaction, and loss of the ability to monitor and control product handling and inventory volumes. That all contributes to

9

a substandard customer interaction with the Stardew Valley IP which in turn damages Plaintiff's reputation and good will. The extent of the harm to Plaintiff's reputation and good and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief.

Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with the Federal Rules of Civil Procedure 65(b).

### 4. The Balance of Hardship Favors Granting Temporary Injunctive Relief and the Public Interest is Served by Entry of the Injunction

The Seventh Circuit "employs a sliding scale approach for this balancing: if a [movant] is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a [movant] is to win the more that balance would need to weigh in its favor." *USA-Halal*, 402 F. Supp. 3d at 433; *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc*, 549 F.3d 1079, 1086 (7th Cir. 2008). Plaintiff has established a high likelihood of success on the merits, therefore, the balance of harms does not need to weigh heavily in its favor. However, the balance of harms does weigh heavily in Plaintiff's favor.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

10

Additionally, as willful copyright infringers, Defendants are entitled to little equitable consideration. See *My-T Fine Corporation v. Samuels*, 69 F.2d 76, 78 (2nd Cir. 1934). There is also a genuine public interest in upholding copyright protections. See *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1066 (7th Cir. 1994) (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983) ("[i]t is virtually axiomatic that the public interest can only be served by upholding copyright protections…").

Defendants have been profiting from the sale of the Unauthorized Stardew Valley Products. The public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval and endorsement. Plaintiff has invested substantial resources into its Stardew Valley IP, and the goodwill associated therewith. In contrast, any injury that Defendants might suffer from entry of a temporary restraining order is nothing more than part of the cost Defendants must pay for violating the law. The injunction would not interfere with any legitimate business or commercial use. The injunction prevents Defendants from profiting off its unlawful acts. Defendants do not have the legal right to use the Stardew Valley Trademarks. Therefore, the balance of hardship weighs in Plaintiff's favor and the public is served by entry of an injunction.

**B.** **The Equitable Relief Sought by Plaintiff is Appropriate.**

**1.** **This Action Should Proceed Without Notice to Defendants to Prevent the Destruction or Concealment of Evidence.**

Fed. R. Civ. P. 65(b) allows for the issuance of an *ex parte* temporary restraining order if (1) "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." *Deckers Outdoor Corp. v. Partnerships and*

11

*Unincorporated Associations*, No. 13 C 2167, 2013 WL 1337616, at *2 (N.D. Ill. Mar. 27. 2013). This court has recognized that an *ex parte* order is warranted when notifying the defendant would "render fruitless further prosecution of this action". *American Can Co. v. Mansukhani*, 742 F.2d 314, 322 citing *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4-5 (2d Dist. 1979).

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the Stardew Valley IP or substantially similar marks on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the Stardew Valley IP and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Stardew Valley IP. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell and offer to sell Unauthorized Stardew Valley Products. Courts in this district have authorized immediate injunctive relief in similar cases involving trademark counterfeiting and infringement. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) (Granting Ex Parte Motion for TRO).

The Court may order relief on an *ex parte* basis where there is a risk that the defendant would hide, or dispose of evidence when the defendant receives notice. Those are precisely the circumstances in this present case. Here, there is a significant likelihood that, if given notice of this action, take steps to conceal, destroy, and/or alter, records relating to the Unauthorized Stardew Valley Products, and the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to off-shore bank accounts outside the jurisdiction of this Court. These likely actions justify, and even require that this action proceed on an *ex parte* basis.

12

See Andrew Masterson Declaration, ¶¶ 30-31.

As the Supreme Court explained, *ex parte* temporary restraining orders "should be restricted to serving their underlying purposes of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 438 (1974). Plaintiff's request is restricted in scope and time. Accordingly, an *ex parte* order is necessary to protect Plaintiff's ability to ascertain the nature and extent of Defendants' currently existing infringing activities and prevent further infringing activities by Defendants and other persons or entities such that a full investigation, aided by this Court's orders, may reveal. Further, all of the requested relief may be granted under the broad injunctive powers of the Lanham Act (15 U.S.C. § 1114), the Copyright Act (17 U.S.C. § 501), and the inherent power of this Court to fashion equitable remedies. Therefore, this Court should grant the *ex parte* relief.

### 2. Preventing the Fraudulent Transfer of Assets is Appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so Plaintiff's right to an equitable accounting of Defendants' profits from sales of Unauthorized Stardew Valley Products is not impaired[2]. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, on information and belief, the Defendants in this case hold most of their assets in off-shore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

---

[2] Plaintiff filed a Motion for Leave to File Certain Documents Under Seal for this same reason.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim as well as its copyright claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover … defendant's profits." Plaintiff also has shown a strong likelihood of succeeding on the merits of its copyright infringement claim and is therefore entitled to recover "… any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Plaintiff's Complaint seeks that Defendants account for and pay to Plaintiff all profits realized by Defendants through its unlawful acts. This Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. See *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, Nos. 03 C 4884 and 03 C 5311, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005).

### 3.        Plaintiff is Entitled to Expedited Discovery.

District courts have broad discretion in managing the discovery process. *Bicycle Peddler, LLC v. Does 1 – 12*, 295 F.R.D. 274, 276 (N.D. Ill. 2013). "Courts evaluate a motion for expedited discovery on the entirety of the record to date and the reasonableness in light of all the surrounding circumstances." *Id.* Pursuant to 28 U.S.C. § 1657, "the court shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief." Federal Rule of Civil Procedure 26(d) allows for expedited discovery "upon motion" and an Advisory Committee comment notes that expedited discovery is appropriate in cases "involving requests for a preliminary injunction. Fed. R. Civ. P. 26(d), and Advisory Comm. Note. Fed. R. Civ. P. 30(a) provides that the Court may grant leave to take early depositions, and Rule 34(b) provides that the court may order production of documents in a shorter time than the usual thirty days permitted.

14

To determine whether to authorize expedited discovery in a particular case, courts generally apply a "good cause" standard. *Deckers Outdoor*, 2013 WL 1337616, at *10. *See* Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). Here, there is good cause to allow for expedited discovery. Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations, and to protect the authenticity of products sold by each Defendant. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm and prevent the Defendants from destroying evidence. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Discovery of physical products directly from Defendants prevents Defendants from destroying and disavowing the existence of the infringing products and further disavowing any connection between the Defendant and the infringing products sold in this state and elsewhere. Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief.

## IV.    Bond for the TRO or Preliminary Injunction

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00).

**V.     Conclusion**

Defendants' unlawful operations are irreparably harming Plaintiff's business, its Stardew

Valley brand, and consumers. In view of the foregoing and consistent with previous similar cases,

Plaintiff respectfully requests that this Court enter a TRO in the form submitted herewith.

Dated: April 6, 2026                                    Respectfully submitted,

                                                        */s/ Sofia Quezada Hastings*
                                                        Sofia Quezada Hastings

                                                        **One of the Attorneys for Plaintiff,**
                                                        **ConcernedApe LLC**

Matthew De Preter
Sofia Quezada Hastings
ARONBERG GOLDGEHN DAVIS & GARMISA
225 W. Washington St. - Suite 2800
Chicago, IL 60606
312-755-3139
cdepreter@agdglaw.com
shastings@agdglaw.com

4884-0479-5279, v. 1

16